IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

Michele Davies,                    )      Civil Action No. 8:11-cv-03091-DCN-JDA
                    Plaintiff,     )
                                   )      **REPORT AND RECOMMENDATION**
                                   )      **OF MAGISTRATE JUDGE**
            vs.                    )
                                   )
Michael J. Astrue,                 )
Commissioner of Social Security,   )
                                   )
                    Defendant.     )

This matter is before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(a), D.S.C.[1]  Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claim for disability insurance benefits ("DIB").  For the reasons set forth below, it is recommended that the decision of the Commissioner be affirmed.

## PROCEDURAL HISTORY

On May 13, 2008, Plaintiff an application for DIB, alleging an onset of disability date of June 15, 2007, subsequently amended to August 4, 2007.  [R. 69, 130–33.]  The claim was denied initially and on reconsideration by the Social Security Administration ("the Administration").  [R. 104–13, 117–18.]  On November 14, 2008, Plaintiff requested a hearing before an administrative law judge ("ALJ") [R. 120], and on February 2, 2010, ALJ Gregory M. Wilson conducted a de novo hearing on Plaintiff's claims [R. 65–103].

---

[1]A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

The ALJ issued a decision on March 1, 2010, finding Plaintiff not disabled under the Social Security Act ("the Act").  [R. 11–23.]  At Step 1,[2] the ALJ found Plaintiff last met the insured status requirements of the Act on March 31, 2008 and that she had not engaged in substantial gainful activity during the period from her alleged onset date of August 4, 2007 through the date last insured.[3]  [R. 13, Findings 1 & 2.]  At Step 2, the ALJ found Plaintiff had the following severe impairments: chronic fatigue syndrome; depression with neurocognitive dysfunction; generalized anxiety disorder; and dysthymia.  [R. 13, Finding 3.]  The ALJ also found Plaintiff had a non-severe impairment of headaches.  [R. 14–15.]  At Step 3, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart A, Appendix 1.  [R. 15, Finding 4.]  The ALJ specifically considered Social Security Ruling ("SSR") 99-2p with respect to Plaintiff's chronic fatigue syndrome ("CFS")[4] and Listings 12.02, 12.04, and 12.06 with respect to Plaintiff's mental impairments of depression/dysthymia, anxiety, and neurocognitive dysfunction.  [R. 15–17.]

---

[2]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

[3]The ALJ noted that, while there was only a narrow period of time between the alleged onset date (August 4, 2007) and the date last insured (March 31, 2008), he reviewed all the evidence in order to glean an accurate overall picture regarding the relevant period.  [R. 13.]

[4]As the ALJ explained,

> Pursuant to SSR 99-2p, CFS is not a specific listed impairment, and its signs and symptoms must be evaluated in conjunction with the listings for medical equivalence.  *Mastro v. Apfel*, 270 F.3d 171 (4th Cir. 2001).  SSR 99-2[p] notes the required concurrence of four or more of the following symptoms: severe memory or concentration impairment; sore throat; tender cervical or axillary lymph nodes; muscle pain; multi-joint pain without joint swelling or redness; headaches of a new type, pattern, or severity; unrefreshing sleep; and postexertional malaise lasting more than 24 hours.

[R. 15.]

2

Before addressing Step 4, Plaintiff's ability to perform her past relevant work, the ALJ found Plaintiff retained the following residual functional capacity ("RFC"):

> I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). I specifically find that the claimant had the light work capacity of lifting 15 pounds occasionally and 10 pounds frequently. She could sit for six of eight hours, walk for six of eight hours, and stand for six of eight hours. She required a sit-stand option of twenty- to thirty-minute intervals in which she would not be required to leave the workstation. She could never climb ladders, ropes, or scaffolds. She could occasionally climb, balance, stoop, kneel, crouch, and crawl. She needed to avoid concentrated exposure to workplace hazards. She was limited to SVP 3 or 4 work, i.e., detailed but not complex. She was limited to frequent public contact.

[R. 17, Finding 5.] Based on this RFC, the ALJ determined at Step 4 that Plaintiff could not perform her past relevant work. [R. 21, Finding 6.] At Step 5, the ALJ determined there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. [R. 22, Finding 10.] Thus, the ALJ concluded Plaintiff was not under a disability as defined by the Act from the alleged onset date of August 4, 2007 through March 31, 2008, the date last insured. [R. 23, Finding 11.]

Plaintiff requested Appeals Council review of the ALJ's decision, but the Council declined review. [R. 1–6.] Plaintiff filed this action for judicial review on November 11, 2011. [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff raises the following issues:

1.    the Commissioner applied an incorrect legal standard by failing to follow the treating physician rule and failing to accord proper weight to the opinions of three treating physicians [Doc. 15 at 6–11; Doc. 19 at 4–11];

3

2.    the Commissioner applied an incorrect legal standard by using a definition of "light work" that differs from the meaning set forth by the Code of Federal Regulations, the *Dictionary of Occupational Titles* ("the DOT"), and the Administration [Doc. 15 at 11; Doc. 19 at 11];

3.    the Commissioner applied an incorrect legal standard by relying on flawed vocational expert testimony at Step 5 of the sequential evaluation process [Doc. 15 at 12–13; Doc. 19 at 12–13]; and

4.    substantial evidence does not support the Commissioner's conclusions regarding Plaintiff's functional capacity [Doc. 15 at 14].

Plaintiff contends that, as a result of these errors, the Commissioner's decision must be reversed and that substantial evidence supports an award of benefits. [*Id.* at 14–17.]

The Commissioner, on the other hand, contends the ALJ's decision is supported by substantial evidence. [Doc. 18 at 11–21.] Specifically, the Commissioner argues the ALJ reasonably assessed Plaintiff's RFC by properly evaluating the opinions of Drs. Tuggle, Russell, and Wright and determining Plaintiff retained the ability to perform less than the full range of light work. [*Id.* at 12–19.] The Commissioner also argues the ALJ reasonably relied on the vocational expert's testimony. [*Id.* at 19–20.] Finally, the Commissioner contends an award of benefits by the Court would not be proper in this case. [*Id.* at 20–21.]

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting

*Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court.  *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also  Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).  Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21

F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four may be appropriate to allow the Commissioner to explain the basis for the decision. *See Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v.*

6

*Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand."). After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of*

*Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[5]  With remand under sentence

six, the parties must return to the court after remand to file modified findings of fact.

*Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and

does not enter a final judgment until after the completion of remand proceedings.  *See*

*Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an

order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C.

§ 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured

for benefits, who are not of retirement age, who properly apply, and who are under a

disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

> the inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or which
> has lasted or can be expected to last for a continuous period
> of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations

have reduced the statutory definition of disability to a series of five sequential questions.

---

[5]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence.  *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect.  *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

*See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims).  The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.  20 C.F.R. § 404.1520.  Through the fourth step, the burden of production and proof is on the claimant.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).  The claimant must prove disability on or before the last day of her insured status to receive disability benefits.  *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969).  If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience.  *Grant*, 699 F.2d at 191.  If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary.  20 C.F.R. § 404.1520(a); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.     *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 404.1572(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 404.1572(b).  If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is

9

generally presumed to be able to engage in substantial gainful activity. *Id.* §§ 404.1574–.1575.

### B.     *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* § 404.1521. When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. § 423(d)(2)(B).

### C.     *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration

requirement found at 20 C.F.R. § 404.1509, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(d).

### D.    *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995). At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[6] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work. 20 C.F.R. § 404.1560(b).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992); 20 C.F.R. § 404.1520(f)–(g). To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids"). Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[7] 20

---

[6]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a).

[7]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. § 404.1569a(a). A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands. *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. § 404.1569a(c)(1).

11

C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *see also Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations).  When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931. In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work.  20 C.F.R. § 404.1569a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy.").  The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments."  *Id.* (citations omitted).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.  *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant issue.  *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important when a claimant appears without counsel.  *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir.

1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

## III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. § 404.1527(c).  Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

13

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 404.1527(c)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986). Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. § 404.1527(d). However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 404.1517; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability. 20 C.F.R. § 404.1517. Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. *Id.*

14

## V.     Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'"  *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain."  *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs."  *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  Indeed, the Fourth Circuit has

15

rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990).  The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
>
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence.  If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability.  Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered.  Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990).  SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p.  *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996).  SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the

adjudicator must consider all of the evidence in the case record, including any statements

by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485;

*see also* 20 C.F.R. § 404.1529(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the

record.  Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ

must articulate specific and adequate reasons for doing so, or the record must be obvious

as to the credibility finding.  *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985).

Although credibility determinations are generally left to the ALJ's discretion, such

determinations should not be sustained if they are based on improper criteria.  *Breeden*,

493 F.2d at 1010 ("We recognize that the administrative law judge has the unique

advantage of having heard the testimony firsthand, and ordinarily we may not disturb

credibility findings that are based on a witness's demeanor.  But administrative findings

based on oral testimony are not sacrosanct, and if it appears that credibility determinations

are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**Residual Functional Capacity**

Plaintiff contends the ALJ's assessment that Plaintiff retained the functional capacity

to perform light work is not supported by substantial evidence because her treating

physicians limited her to less than light work.  [Doc. 15 at 14.]  In a related argument,

Plaintiff contends the ALJ improperly evaluated and weighed the opinions of her treating

physicians and applied a definition of light work that differs from the meaning set forth by

relevant authorities.  [*Id.* at 6–11; Doc. 19 at 4–11.]  For the reasons explained below, the Court finds the ALJ's RFC assessment is supported by substantial evidence because the ALJ properly evaluated the treating physicians' opinions and properly determined Plaintiff was capable of performing less than the full range of light work.

The Administration has provided a definition of RFC and explained what a RFC assessment accomplishes:

> RFC is what an individual can still do despite his or her limitations.  RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work related physical and mental activities.   Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis.  A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. . . .

SSR 96-8p, 61 Fed. Reg. 34,474-01, at 34,475 (July 2, 1996) (internal citation and footnotes omitted).  The RFC assessment must first identify the claimant's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. 404.1545 and 416.945.  *See id.*  Only after this identification and assessment may RFC be expressed in terms of the exertional levels of work: sedentary, light, medium, heavy, and very heavy.   *Id.*   Additionally, the Administration has determined that in assessing RFC, the ALJ

> must consider only limitations and restrictions attributable to medically determinable impairments. It is incorrect to find that [a claimant] has limitations or restrictions beyond those caused

> by his or her medical impairment(s) including any related
> symptoms, such as pain, due to factors such as age or height,
> or whether the [claimant] had ever engaged in certain activities
> in his or her past relevant work (e.g., lifting heavy weights.)
> Age and body habitus (i .e., natural body build, physique,
> constitution, size, and weight, insofar as they are unrelated to
> the [claimant]'s medically determinable impairment(s) and
> related symptoms) are not factors in assessing RFC . . . .

*Id.* at 34,476.

To assess a claimant's RFC, the ALJ must consider all relevant evidence in the record, including medical history, medical signs, laboratory findings, lay evidence, and medical source statements. *Id.* at 34,477. SSR 96-8p specifically states, "The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Id.* at 34,478.

### Treating Physician Opinions

The ALJ is obligated to evaluate and weigh medical opinions "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). Courts typically "accord 'greater weight to the testimony of a treating physician' because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." *Id.* (quoting *Mastro*, 270 F.3d at 178). While the ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, *Craig*, 76 F.3d at 590, the ALJ must still weigh the

19

medical opinion based on the factors listed in 20 C.F.R. § 404.1527(c).  The opinion of a treating physician is given controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(c)(2).

Additionally, SSR 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion:

> Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

1996 WL 374188, at *4 (July 2, 1996).  However, the ALJ need not give special significance to the opinion of a treating physician on an issue reserved to the Commissioner:

> Medical sources often offer opinions about whether an individual who has applied for title II or title XVI disability benefits is "disabled" or "unable to work," or make similar statements of opinions.  In addition, they sometimes offer opinions in other work-related terms; for example, about an individual's ability to do past relevant work or any other type of work.  Because these are administrative findings that may determine whether an individual is disabled, they are reserved to the Commissioner.  Such opinions on these issues must not be disregarded.  However, even when offered by a treating source, they can never be entitled to controlling weight or given special significance.

SSR 96-5p, 61 Fed. Reg. 34,471-01, at 34,474 (July 2, 1996); *see* 20 C.F.R. § 404.1527(d).

### Dr. Tuggle's Opinion

Dr. Tuggle saw Plaintiff approximately 23 times, beginning on October 3, 2007. [R. 221–33, 247, 268–72, 532–58.] On November 15, 2009, Dr. Tuggle completed a medical source statement opining that, as of October 3, 2007, Plaintiff had the following work limitations: frequently lift and/or carry five pounds; push/pull five pounds; sit 30 minutes at one time and three hours total in an eight-hour work day; stand ten minutes at one time and one hour in an eight-hour work day; walk 300 yards at one time; and occasional stair climbing, such as twice a day. [R. 292.] Moreover, Dr. Tuggle opined Plaintiff could not perform work on ladders or scaffolding, perform overhead work, or engage in repetitive bending/stooping. [*Id.*] Dr. Tuggle also indicated that, as of October 3, 2007,

– Plaintiff needed a sit/stand option to alleviate her pain symptoms;

– Plaintiff needed the option of taking unscheduled rest periods, in addition to scheduled rest periods, to rest or lie down at her own discretion due to fatigue or pain symptoms;

– Plaintiff's pain or other conditions markedly interfered with her ability to concentrate and/or persist toward the completion of a task; and

– Plaintiff's pain or other conditions markedly interfered with her ability to handle the stress found in a work environment and/or to interact appropriately with employers, co-workers, or customers.

[R. 293.] Additionally, Dr. Tuggle opined that, due to chronic fatigue syndrome and not her medications, Plaintiff could not safely operate heavy machinery, hazardous machines, or a commercial vehicle. [*Id.*] Dr. Tuggle estimated Plaintiff would be absent from work twenty days per month because of repeat hospitalizations, doctor's visits, her medical

condition, and/or the side effects of her medications. [*Id.*] Dr. Tuggle concluded that, as of October 3, 2007, Plaintiff was unable to work full time. [R. 294.]

>    *Dr. Russell's Opinion*

Dr. Russell, a specialist in neuro-immune disorders, treated Plaintiff beginning on August 4, 2007 and saw her about thirteen times. [R. 298–318, 460–74, 478–86.] On December 23, 2008, Dr. Russell completed a medical source statement providing the following work limitations: frequently lift and/or carry 10 pounds; occasionally lift and/or carry 15 pounds; push/pull 20 pounds; sit two hours at one time or one hour total in an eight-hour work day[8]; stand twenty minutes at one time and two hours total in an eight-hour work day; and walk 1000 feet at one time. [R. 295; *see also* R. 475 (duplicate).] Further, Dr. Russell opined Plaintiff could not perform work on ladders or scaffolds, perform overhead work, or engage in repetitive bending or stooping. [R. 295; *see also* R. 475 (duplicate).] Dr. Russell also indicated that, as of August 4, 2007,

> – Plaintiff needed a sit/stand option to alleviate her pain symptoms;

> – Plaintiff needed the option of taking unscheduled rest periods, in addition to scheduled rest periods, to rest or lie down at her own discretion due to fatigue or pain symptoms;

---

[8]The Commissioner points out in his brief that Dr. Russell's opinion is inconsistent with respect to Plaintiff's sitting limitations. [Doc. 18 at 15.] In response, Plaintiff argues,

> Plaintiff concedes that both of these limitations cannot be correct. It is likely that either the one (1) hour total a day is a scrivener's error that should have been two (2) hours a day total, or that Dr. Russell intended to indicate that the Plaintiff was limited to one (1) stretch of 120 minutes of sitting per day. Regardless, it is clear that Dr. Russell, a treating physician, imposed significant sitting restrictions of the Plaintiff.

[Doc. 19 at 5.] The Court notes the ALJ did not rely on this inconsistency in discrediting Dr. Russell's opinion with respect to Plaintiff's sitting limitations. [*See* R. 21.]

– Plaintiff's pain or other conditions markedly interfered with her ability to concentrate and/or persist toward the completion of a task; and

– Plaintiff's pain or other conditions markedly interfered with her ability to handle the stress found in a work environment and/or to interact appropriately with employers, co-workers, or customers.

[R. 296; *see also* R. 476 (duplicate).]  Additionally, Dr. Russell opined that, due to her medications or her underlying injury, Plaintiff could not safely operate heavy machinery, hazardous machines, or a commercial vehicle.  [R. 296; *see also* R. 476 (duplicate).]  Dr. Russell also indicated Plaintiff has sensory defensiveness, which keeps her from working in loud areas.  [R. 296; *see also* R. 476 (duplicate).]  Dr. Russell estimated Plaintiff would be absent from work four days per month because of repeat hospitalizations, doctor's visits, her medical condition, and/or the side effects of her medications.  [R. 296; *see also* R. 476 (duplicate).]  Dr. Russell concluded that, as of August 4, 2007, Plaintiff was unable to work full time.  [R. 297; *see also* R. 477 (duplicate).]

*Dr. Wright's Opinion*

Dr. Wright, a psychiatrist at Piedmont Mental Health, treated Plaintiff beginning on November 20, 2008, after the date last insured, and saw Plaintiff approximately seven times prior to the ALJ's decision.  [R. 511–26.]  On July 30, 2009, Dr. Wright completed a medical source statement indicating that Plaintiff's impairments met Listing 12.04 for affective disorders.  [R. 527–31.]  As to Plaintiff's functional limitations, Dr. Wright assessed Plaintiff with moderate limitation in activities of daily living; marked limitation in maintaining social functioning; marked limitation in maintaining concentration, persistence, or pace; and marked episodes of decompensation, each of extended duration.  [R. 531.]  Dr. Wright also opined that Plaintiff had a medically documented history of an affective

disorder of at least two years' duration that has caused more than a minimal limitation of

ability to do any basic work activity, with symptoms or signs currently attenuated by

medication or psychological support and a residual disease process that has resulted in

such a marginal adjustment that even a minimal increase in mental demands or change

in the environment would be predicted to cause Plaintiff to decompensate.  [*Id.*]

> *Analysis*

In specifically analyzing the opinions of Drs. Tuggle and Russell, the ALJ noted,

> The claimant had two treating physicians submit statements
> regarding her broad limitations, and I am required to give some
> weight to these assessments.  I am not required to give
> controlling weight to these assessments if they are not in
> accord with the record as a whole.  In this case, I adopted Dr.
> Russell's lifting/carrying restrictions. I adopted his assessment
> of a sit-stand option, but I provided a more specific
> assessment that the sit-stand option would not be exercised
> away from the work station.  I did not give controlling weight to
> the rest of Dr. Russell's assessment.  Neither his nor Dr.
> Tuggle's medical records supports the remainder of his
> assessment.  The claimant did not consistently report four of
> the symptoms that are enumerated in SSR 99-2p and are
> based on generally accepted medical standards.  As noted
> above, she actually denied malaise, headaches, neck
> tenderness, poor concentration, and poor sleep on two
> occasions before the date last insured.  She also reported
> improvement in her CFS symptoms on several occasions.
> With respect to Dr. Tuggle's assessment, I gave some weight
> to her broad restrictions in the residual functional capacity I
> assessed the claimant, but Dr. Tuggle's treatment records do
> not support the extent of opinion.  In fact, Dr. Tuggle's records
> before the date last insured present a benign clinical picture of
> the claimant's CFS.  As noted above, the claimant reported
> fatigue on only one occasion to Dr. Tuggle before the date last
> insured, and she did not consistently report any of the other
> symptoms noted by SSR 99-2p.

[R.  21 (citations omitted).]  Additionally, with respect to Dr. Wright's opinion, the ALJ

explained,

> [Dr. Wright's] opinion was rendered based on treatment records beginning six months after the date last insured. While I did give some consideration to these psychiatric records, the records themselves do not support Dr. Wright's broad limitations. The claimant was a no-show on one occasion and did not follow up for several months. Such lack of follow-up is inconsistent with Dr. Wright's opinion of a listing-level mood disorder. Furthermore, the claimant's physician Dr. Tuggle found only slight limitation from the claimant's mental impairments and had not recommended specialized treatment.

[*Id.* (citations omitted).]

Upon consideration of the record, the Court concludes the ALJ's decision is supported by substantial evidence and is not contrary to law. The ALJ properly considered the medical opinions of Drs. Tuggle, Russell, and Wright in light of the medical evidence and in accordance with the above cited regulations and determined their opinions regarding Plaintiff's limitations were not fully supported by the medical evidence, including their own respective treatment notes. While Plaintiff argues the opinions of Drs. Tuggle, Russell, and Wright are clear, consistent, and supported by substantial evidence, Plaintiff has failed to demonstrate how the records are consistent or support stricter limitations than those accorded by the ALJ.[9] *See Grant*, 699 F.2d at 191 (stating the claimant bears the burden of proof through Step 4 of the sequential evaluation, the claimant's ability to perform her past relevant work). Further, the Court has reviewed the record and concludes

---

[9]For example, the ALJ noted Dr. Wright opined that Plaintiff met Listing 12.04 for affective disorders but that Dr. Tuggle found Plaintiff was only slightly limited by her mental impairments. [R. 21.] Plaintiff asserts Dr. Wright is in a better position to evaluate the limiting effects of Plaintiff's mental impairments because Dr. Wright is a psychiatrist but Plaintiff sees Dr. Tuggle mainly for treatment of her physical impairments. [Doc. 15 at 10.] However, it is the ALJ's duty to weigh the medical opinions and resolve conflicts in the evidence, and this Court is bound to uphold the ALJ's decision as long as it is supported by substantial evidence, even if the Court would have reached a different conclusion. *See Craig*, 76 F.3d at 589; *Laws*, 368 F.2d at 642; *Snyder*, 307 F.2d at 520. Therefore, without more, the Court cannot say that the ALJ's decision in this case is contrary to law or lacks sufficient reasoning for the Court to determine whether it is supported by substantial evidence, and the Court concludes the ALJ's decision with respect to the treating physicians' opinions should be upheld.

the ALJ's treatment of the above medical opinions is supported by substantial evidence.

*See Laws*, 368 F.2d at 642 (holding it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner, so long as the decision is supported by substantial evidence).

### Light Exertional Level

The Social Security regulations provide the following definition of light work:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the Commissioner will] determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b). The Administration has also acknowledged that the RFC of some claimants may be more or less than the capacity expressed by the specifically defined exertional levels:

> In some instances, an individual can do a little more or less than the exertion specified for a particular range of work; e.g., the person is considered to be physically capable of meeting the exertional demands of light work except that he or she can lift no more than 15 pounds at a time rather than 20 pounds, or he or she can fully meet the exertional demands of light work and can also perform part of the greater lifting requirement of medium work (such as up to 30 pounds at a time rather than 50 pounds at a time).

SSR 83-12, 1983 WL 31253, at *1 (1983). If a claimant's exertional RFC does not coincide with a defined exertional level, the occupational base is affected and the ALJ is required

26

to consider the extent of any erosion of the occupational base and assess its significance, for which the ALJ may require the assistance of a vocational expert. *Id.* at *2.

Here, the ALJ apparently found Plaintiff suffered from impairments that reduced her capacity to perform the exertional requirements specified for the full range of light work and, therefore, did not state that Plaintiff could perform the full range of light work. [R. 17.] Rather, the ALJ specifically delineated what he found to be Plaintiff's RFC. [R. 17.] As a result, the ALJ consulted a vocational expert to determine the extent to which Plaintiff's limitations eroded the unskilled light work occupational base. [*See* R. 22, 95–102.] Thus, the ALJ's decision is in accordance with applicable law, and the Court concludes Plaintiff's argument that the ALJ used an incorrect definition of light work is without merit.

**Vocational Expert Testimony**

Plaintiff contends the ALJ relied on "flawed Vocational Expert testimony" because the "the hypothetical limits the Plaintiff to lifting to fifteen (15) pounds occasionally, and light work requires the ability to lift twenty (20) pound occasionally." [Doc. 15. at 12.] As explained above, Plaintiff's argument is without merit.

As stated, once the claimant reaches Step 5 of the sequential evaluation, the Commissioner bears the burden of providing evidence of a significant number of jobs in the national economy that a claimant could perform, *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002); the ALJ may use a vocational expert to assist in this analysis, 20 C.F.R. § 404.1566(e). "In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in

response to proper hypothetical questions which fairly set out all of [the] claimant's impairments." *Walker*, 889 F.2d at 50 (citations omitted).

Here, the ALJ found the light work requirements had been eroded by Plaintiff's impairments and properly adjusted those requirements in light of Plaintiff's impairments. [R. 17–21.]  The ALJ presented a hypothetical to the vocational expert setting out the limitations included in the ALJ's RFC assessment, and the vocational expert testified jobs existed in the national economy that Plaintiff could perform with that RFC.  [R. 97–98.] The vocational expert also affirmed that her testimony was consistent with the DOT in accordance with SSR 2000-4P, with the exception of her knowledge of the ability to alternate sitting and standing, which she learned through doing onsite job analysis observing jobs.  [R. 98.]  Accordingly, the Court concludes the ALJ reasonably relied on proper vocational expert testimony, and Plaintiff's argument to the contrary is without merit.

## CONCLUSION AND RECOMMENDATION

Wherefore, based on the foregoing, it is recommended that the decision of the Commissioner be AFFIRMED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

January 24, 2013
Greenville, South Carolina