**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION**

| | |
|---|---|
| MICHELE DAVIES, ) | |
| ) | No. 8:11-cv-03091-DCN-JDA |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| ) | |
| CAROLYN W. COLVIN, ACTING ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY,[1] ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the court on the magistrate judge's Report and Recommendation (R&R) that this court affirm the Administrative Law Judge's (ALJ) decision denying plaintiff's application for disability insurance benefits (DIB). Plaintiff filed objections to the R&R. For the reasons set forth below, the court adopts the R&R and affirms the ALJ's decision.

## I.  BACKGROUND[2]

Plaintiff Michele Davies filed an application for DIB on May 13, 2008. She alleges a disability onset date of August 4, 2007[3] due to chronic fatigue syndrome, depression, and anxiety. Her date last insured was March 31, 2008. Davies' claim was denied initially and upon reconsideration by the Social Security Administration. The

---

[1] Carolyn W. Colvin is substituted for Michael J. Astrue as the named defendant because she became the Acting Commissioner of Social Security on February 14, 2013. See Fed. R. Civ. P. 25(d).

[2] The court accepts the magistrate judge's findings of fact to the extent plaintiff does not object to them. See Thomas v. Arn, 474 U.S. 140, 149-50 (1985).

[3] Davies originally alleged an onset date of June 15, 2007 but amended the date to August 4, 2007 to comport with the medical evidence. See Tr. 69.

1

ALJ held a hearing on February 2, 2010 and issued a decision on March 1, 2010, finding Davies not disabled under the Social Security Act. Tr. 11-23. The Appeals Council denied review, rendering the ALJ's decision that of the Commissioner of Social Security.

On November 11, 2011, Harris filed a civil action seeking review of the ALJ's decision and arguing that the ALJ: (1) failed to follow the treating physician rule by according improper weight to Davies' three treating physicians; (2) applied an incorrect definition of "light work"; (3) relied on flawed testimony by the Vocational Expert (VE); and (4) made a residual functional capacity (RFC) assessment that was unsupported by substantial evidence. Pl.'s Br. 3-10. Magistrate Judge Jacquelyn D. Austin issued an R&R on January 24, 2013, recommending that the ALJ's decision was supported by substantial evidence and not contrary to law. R&R 25. Davies now objects to the R&R, reasserting the first and third arguments raised in his opening brief.

Davies is a single mother of an autistic child. She has a college education. Tr. 70. Her date last employed was in late 2003, before which she worked as a bookkeeper, mortgage processor, customer service representative, and law firm receptionist. Tr. 72, 169. The ALJ determined that she suffers from the severe impairments of chronic fatigue syndrome, depression with neurocognitive dysfunction, generalized anxiety disorder, and dysthymia. Tr. 13. Davies testified before the ALJ that the worst problems she experiences are "[t]he fatigue and the lethargicness, the need to sleep almost all day." Tr. 77.

The evidence presented by Davies includes records from approximately thirteen medical visits to Dr. Bruce L. Russell beginning in August 2007. Tr. 311. During her visits, Davies complained of problems relating to chronic fatigue syndrome, including

poor attention, muscle ache and fatigue, cognitive decline, and "brain fog." Tr. 298, 307, 311, 466, 471. Dr. Russell completed a medical source statement on December 23, 2008. Tr. 295-97. He opined that as of August 4, 2007, Davies was unable to work full time and had the following restrictions: frequently lift/carry up to ten pounds; push/pull up to twenty pounds; sit for no more than two hours at a time and for a total of one hour in an eight hour work day[4]; stand for no more than twenty minutes at a time and for a total of two hours in an eight hour work day; and walk up to 1000 feet at a time. Tr. 295-96. Dr. Russell estimated that Davies would miss four days of work per month due to her medical conditions and/or effect of her medications. Tr. 296.

Davies began to see Dr. Anne Tuggle in October 2007. Some visits were related to Davies' depression, Tr. 228; others were for treatment of fever, cough and congestion, allergies, and sinus infection. Tr. 224, 228, 231. Dr. Tuggle saw Davies approximately 23 times. R&R 21. Dr. Tuggle completed a medical source statement on November 15, 2008, opining that in October 2007, Davies had the following work restrictions: frequently lift/carry up to five pounds; push/pull up to five pounds; sit for thirty minutes at a time and for a total of three hours in an eight hour work day; stand for ten minutes at a time and for a total of one hour in an eight hour work day; and walk up to 300 yards at a time. Tr. 292. Dr. Tuggle further opined that Davies would miss twenty days of work per month due to her medical conditions and/or effect of her medications. Tr. 293.

Davies also presented evidence of treatment by Dr. Lynn Wright of Piedmont Mental Health beginning in November 2008, after the date last insured. Tr. 518. Dr. Wright filled out a social security disability questionnaire on July 30, 2009, stating that

---

[4] The inconsistency in this opinion was recognized by the ALJ and the magistrate judge. See Tr. 99; R&R 22 n.8.

Davies' "chronic mood disorder" is a severe impairment. Tr. 527-31. In addition, she opined that Davies has moderate restriction of activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence, or pace, and marked episodes of decompensation, each of extended duration. Tr. 531.

The ALJ employed a five-step sequential evaluation process to determine whether Davies was disabled from August 4, 2007 to March 31, 2008. The ALJ found: (1) Davies did not engage in substantial gainful activity during the period at issue; (2) she suffered from the severe impairments of chronic fatigue syndrome, depression with neurocognitive dysfunction, generalized anxiety disorder, and dysthymia; (3) she did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments found at 20 C.F.R. part 404, subpart P, appendix 1; (4) she was unable to perform past relevant work but had the RFC to perform a range of light work with certain restrictions; and (5) she could perform jobs existing in significant numbers in the national economy. Tr. 13-23.

The ALJ made an RFC assessment before reaching the fourth step of the sequential analysis. He determined that Davies "had the light work capacity of lifting 15 pounds occasionally and 10 pounds frequently," "could sit for six of eight hours, walk for six of eight hours, and stand for six hours," "required a sit-stand option of twenty- to thirty-minute intervals in which she would not be required to leave the workstation," "could never climb ladders, ropes, or scaffolds," "could occasionally climb, balance, stoop, kneel, crouch, and crawl," "needed to avoid concentrated exposure to workplace hazards," "was limited to . . . detailed but not complex [work]," and "was limited to

frequent public contact." Tr. 17.  In reaching this assessment, the ALJ adopted the lifting/carrying restrictions provided by Dr. Russell but gave "some weight," rather than controlling weight, to the rest of his assessments.  In addition, the ALJ gave "some weight" to the "broad restrictions" assessed by Dr. Tuggle.  The ALJ gave "some consideration" to the psychiatric opinion of Dr. Wright, even though her opinion was based on treatment records beginning six months after the date last insured.  Finally, the ALJ rejected state agency findings of non-severity as to both physical and mental impairments.  Tr. 21.

## II.  STANDARD OF REVIEW

This court is charged with conducting a de novo review of any portion of the magistrate judge's R&R to which specific, written objections are made.  28 U.S.C. § 636(b)(1).  A party's failure to object is accepted as agreement with the conclusions of the magistrate judge.  See Thomas v. Arn, 474 U.S. 140, 149-50 (1985).  The recommendation of the magistrate judge carries no presumptive weight, and the responsibility to make a final determination rests with this court.  Mathews v. Weber, 423 U.S. 261, 270-71 (1976).

Judicial review of the Commissioner's final decision regarding disability benefits "is limited to determining whether the findings of the [Commissioner] are supported by substantial evidence and whether the correct law was applied."  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  "Substantial evidence has been defined . . . as more than a scintilla, but less than [a] preponderance."  Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964).  In other words, "[i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S.

389, 401 (1971) (internal quotation marks omitted).  "[I]t is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the [Commissioner] if his decision is supported by substantial evidence."  Hays, 907 F.2d at 1456.

### III.   DISCUSSION

Davies objects to the magistrate judge's R&R on two grounds.  First, she contends the ALJ did not follow the treating physician rule and failed to give proper weight to her treating physicians' opinions.  Second, she contends the ALJ relied on flawed VE testimony.

**A.  Treating Physician Rule**

Under the treating physician rule, an ALJ will "typically accord greater weight to the testimony of a treating physician because the treating physician has necessarily examined the applicant and has a treating relationship with the applicant."  Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006) (internal quotation marks omitted).  If the treating physician's opinion is supported by clinical evidence or is consistent with other substantial evidence, the ALJ must give it controlling weight.  Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001).  But where "a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight."  Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996).

When an ALJ chooses to assign less than controlling weight to a treating physician's opinion, she must "rationally articulate the grounds for her decision."  Steel v. Barnhart, 290 F.3d 936, 941 (7th Cir. 2002).  Under 20 C.F.R. § 404.1527(c), the ALJ must weigh various factors in deciding the weight due a treating physician's opinion.

"[E]ven where the treating physician's opinion is not entitled to 'controlling weight' because it is inconsistent with the other substantial evidence in the case record, the treating physician's opinion should not be wholly rejected." Zarkowski v. Barnhart, 417 F. Supp. 2d 758, 765 (D.S.C. 2006).

In the instant case, the ALJ did not wholly reject the opinions of Drs. Russell and Tuggle. Instead, the ALJ accorded "some weight" to both of the opinions. The ALJ specifically adopted Dr. Russell's lifting/carrying restrictions and his assessment of a sit/stand option. Tr. 21. The ALJ weighed the remainder of Dr. Russell's opinion by considering the frequency, nature, and extent of examination (e.g., "[T]he claimant sought treatment for her chronic fatigue syndrome from Texas family practitioner Bruce Russell, M.D.," Tr. 14), evidence supporting the opinion (e.g., "The claimant reported to Dr. Russell muscle pain on several occasions," Tr. 19); and consistency with the record as a whole (e.g., "[T]he evidence as a whole requires broad limitations," Tr. 19; "Neither [Dr. Russell's] or Dr. Tuggle's medical records support[] the remainder of [Dr. Russell's] assessment," Tr. 21). The ALJ made similar considerations when concluding that Dr. Tuggle's assessments deserved "some weight." See, e.g., Tr. 14 ("Primary care physician Ann Tuggle, M.D., treated the claimant for chronic fatigue syndrome, depression, and neurocognitive dysfunction."); Tr. 20 ("Dr. Tuggle noted several months after the date last insured that the claimant's mental impairments only slightly limited her."); Tr. 21 ("Dr. Tuggle's treatment records do not support the extent of opinion."). The ALJ's analysis was in accordance with the applicable law and supported by substantial evidence. See Luckey v. Astrue, 458 F. App'x 322, 325 (5th Cir. 2011) ("[T]he ALJ, and not this Court, must decide what weight to give the proffered medical evidence."; noting

that claimant's request for court to reweigh evidence and substitute judgment for that of the Commissioner "is neither our place nor our prerogative").

As for Dr. Wright's psychiatric assessments, the ALJ was not required to afford them controlling weight, as they were "rendered based on treatment records beginning six months after the date last insured."[5] Tr. 21; see Johnson v. Barnhart, 434 F.3d 650, 655-56 (4th Cir. 2005) (holding that the opinion of a treating physician rendered nine months after the claimant's date last insured was irrelevant); Carroll ex rel. Carroll v. Commissioner, No. 11-2752, 2013 WL 160261, at *1 (D. Md. Jan. 11, 2013) ("The reasons for affording controlling weight to a treating physician are inapplicable where that physician did not begin treating the claimant until several years after the relevant time frame.").

For these reasons, the court agrees with the magistrate judge that "the ALJ's RFC assessment is supported by substantial evidence because the ALJ properly evaluated the treating physicians' opinions and properly determined Plaintiff was capable of performing less than the full range of light work." R&R 18.

### B. Vocational Expert Testimony

VE testimony is offered to assist the ALJ in determining whether the Commissioner meets his burden under step five of the sequential evaluation. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). The VE's opinion must be "based upon a consideration of all other evidence in the record . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." Id.

---

[5] Dr. Wright began treating Davies on November 20, 2008, see Pl.'s Reply Br. 7 (citing Tr. 511), and filled out a Social Security Disability Questionnaire over one year after the date last insured.

> The ALJ's first hypothetical question to the VE was as follows:
>
> Please assume you're dealing with a hypothetical individual the same age as the claimant and the same educational background and past work experience. Further, assume that this hypothetical individual can lift 15 pounds occasionally, 10 pounds frequently, stand six of eight hours, walk six of eight hours and sit six of eight hours. This individual would need a sit/stand option. Sit/stand option would not remove one from the workstation, but the intervals would be 20 to 30 minutes at a time. Ropes, ladders and scaffolds would be never. Hazards, avoid concentrated exposure. Climbing and balancing, crawling, stooping, kneeling and crouching [would] be occasional. This individual could do SVP 3 and 4 work, that would be detailed but not complex work. Contact with the public would be frequent. Could such an individual perform any of the claimant's past relevant work as actually performed or as generally performed in the national economy?

Tr. 97. The VE responded that the hypothetical individual could not perform her past relevant work, but could work as a file clerk, storage facility rental clerk, or office helper. Tr. 97-98. The VE also testified that her answers were consistent with Social Security Ruling 00-4p and the Dictionary of Occupational Titles (DOT), "with the exception of [her] knowledge of the ability to alternate sitting and standing, which [she] learned through doing onsite job analysis observing jobs." Tr. 98.

As noted above, in his RFC analysis, the ALJ concluded Davies could perform less than the full range of light work and required a sit/stand option. Davies' objects that the VE's response to the hypothetical failed to account for the reduced number of jobs requiring less than the full range of work at the light exertional level. See Pl.'s Obj. 5-6 ("The record contains no indication that the VE reduced the number of jobs stated due to a finding of less than the full range of light work.").

Pursuant to SSR 00-4p, an ALJ has a duty to inquire whether a VE's testimony is consistent with the DOT and, if there is a conflict, determine whether the VE's explanation for such a conflict is reasonable. With regard to the sit/stand option, the ALJ

fulfilled his duty under SSR 00-4p by inquiring on the record whether there was an inconsistency between the VE's testimony and the DOT.  See Fisher v. Barnhart, 181 F. App'x 359, 366 (4th Cir. May 16, 2006) (noting that the ALJ abided by SSR 00-4p by "inquir[ing] on the record whether the [VE]'s testimony was consistent with the [DOT]"); Haddock v. Apfel, 196 F.3d 1084, 1087 (10th Cir. 1999) (the ALJ's duty is met when he "elicits a reasonable explanation for any discrepancy").  The VE testified that her analysis of jobs allowing for the ability to alternate sitting and standing was based on her professional observation and experience, which courts have held "is a reasonable explanation under these circumstances."  Pierpaoli v. Astrue, No. 10-2401, 2012 WL 265023, at *4 & n.6 (D.S.C. Jan. 30, 2012).

As for jobs requiring less than the full range of light work, the ALJ specifically mentioned the functional limitations in his hypothetical question to the VE, and the VE responded that jobs existed in the national economy that could be performed with that RFC.  See Tr. 97-98; Fisher, 181 F. App'x at 364 (stating that a hypothetical question is unimpeachable if it adequately reflects a residual functional capacity for which the ALJ had sufficient evidence).  Moreover, there was no subsequent inquiry by plaintiff or her attorney at the hearing, indicating there was no misunderstanding on this issue.  See Mosteller v. Astrue, No. 08-003, 2010 WL 5317335, at *4-5 (W.D.N.C. July 26, 2010) (noting that claimant's argument under SSR 00-4p may be waived by failure to raise issue at the ALJ hearing).

For these reasons, and those set forth by the magistrate judge, the court finds no error in the ALJ's reliance on the VE's testimony.

## IV.   CONCLUSION

For the reasons set forth above, the court **ADOPTS** the magistrate judge's R&R and **AFFIRMS** the Commissioner's decision.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**February 26, 2013**
**Charleston, South Carolina**